NOTICE
Decision filed 11/10/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 150055

NO. 5-15-0055

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| DANNY FOSTER and KATHLEEN FOSTER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Respondents, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-L-530 |
| | ) | |
| HILLSBORO AREA HOSPITAL, INC., LAUREL | ) | |
| KIETZMAN, M.D., ARTHUR SIPPO, M.D., | ) | |
| ARTHUR C. SIPPO, M.D., MPH, LLC, BRANDON | ) | |
| WYNN, D.O., CLINICAL RADIOLOGISTS, S.C., | ) | |
| BARBARA MULCH, M.D., SPRINGFIELD | ) | |
| CLINIC, LLP, and ILLINOIS EMERGENCY | ) | |
| PHYSICIANS, LLP, | ) | Honorable |
| | ) | William A. Mudge, |
| Defendants-Petitioners. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Presiding Justice Schwarm and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs, Danny Foster and Kathleen Foster, brought a multi-count, medical negligence complaint in the circuit court of Madison County, against the defendants, Hillsboro Area Hospital, Inc., Laurel Kietzman, M.D., Arthur Sippo, M.D., MPH, LLC, Brandon Wynn, D.O., Clinical Radiologists, S.C., Barbara Mulch, M.D., Springfield Clinic, LLP, and Illinois Emergency Physicians, LLP.  All defendants, except Dr. Wynn

1

and Clinical Radiologists, S.C., moved to transfer the action to Montgomery County under the doctrine of intrastate *forum non conveniens*. Following a hearing, the circuit court denied the motions to transfer.

¶ 2　The defendants filed a petition for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. July 1, 2014). Initially, this court denied the petition. Thereafter, the Illinois Supreme Court issued a supervisory order directing this court to vacate its order and to consider the matter on the merits. Pursuant to the supervisory order, we vacated our previous order and allowed the defendants' petition. For reasons that follow, we affirm.

¶ 3　　　　　　BACKGROUND AND PROCEDURAL HISTORY

¶ 4　　　　　　　　The Plaintiffs' Complaint

¶ 5　On April 4, 2014, the plaintiffs, Danny Foster and Kathleen Foster, filed a medical negligence complaint in the circuit court of Madison County. The following factual allegations are set forth in the complaint.

¶ 6　On June 22, 2012, Danny went to see his primary care physician, Dr. Barbara Mulch, at the Springfield Clinic in Hillsboro, Illinois. Danny presented with complaints of abdominal pain and cramping. Dr. Mulch conducted an evaluation, and ordered an abdominal computerized tomography (CT) scan. The CT scan was performed on June 27, 2012, at the Hillsboro Area Hospital. Dr. Brandon Wynn, a radiologist employed by Clinical Radiologists, S.C., interpreted the scan and prepared a report of his findings. In his report, he did not mention whether a gastric ulcer was evident on the CT scan.

2

¶ 7    Danny continued to have abdominal symptoms, so he returned to Hillsboro Area Hospital on June 28, 2012.  Danny was seen by Dr. Laurel Kietzman, the attending physician in the emergency department.  Dr. Kietzman evaluated Danny, but she did not review his CT scan or order any other diagnostic tests.  After conferring with Dr. Mulch, Dr. Kietzman discharged Danny.  The next day, Danny saw Dr. Mulch at her office in Hillsboro.  Dr. Mulch did not order any additional tests, and did not diagnose Danny's gastric ulcer during that visit.  Throughout the next two weeks, Danny's abdominal pain "continued and intensified."  On July 9, 2012, Danny returned to the emergency department at Hillsboro Area Hospital.  Danny was evaluated by Dr. Arthur Sippo.  Dr. Sippo discharged Danny without conferring with Dr. Mulch, without reviewing the CT scan, and without ordering additional diagnostic testing.

¶ 8    On July 10, 2012, Danny presented to the emergency department at St. Francis Hospital in Litchfield, Illinois, with continuing complaints of abdominal pain.  A CT scan of Danny's abdomen revealed a large, perforated gastric ulcer.  Danny was immediately transferred by helicopter to St. John's Hospital in Springfield, Illinois.  Danny underwent surgery, and he remained hospitalized at St. John's Hospital for an extended period of time.

¶ 9    The complaint alleges that the defendants failed to diagnose and properly treat Danny's gastric ulcer, and that Danny suffered permanent injuries and damages as a direct and proximate result of the various negligent acts or omissions of the defendants.  The complaint also includes a claim on behalf of Danny's wife, Kathleen, for loss of consortium.

¶ 10                    *Forum Non Conveniens* Motions

¶ 11    On May 12, 2012, Dr. Mulch and Springfield Clinic filed a motion, with attachments, to transfer the case from Madison County to Montgomery County based on the doctrine of *forum non conveniens*. Ultimately, each of the defendants, except Dr. Wynn and Clinical Radiologists, S.C., either filed a motion to transfer, or joined in the motion filed by Dr. Mulch and Springfield Clinic. The moving defendants argued that Montgomery County was a more convenient forum for the litigation because the events giving rise to the action occurred in Montgomery County, and because most of the defendants and witnesses resided in or near Montgomery County. They also argued that the plaintiffs' choice of forum was entitled to little or no deference because it was neither the plaintiffs' home forum, nor the forum where the cause of action arose. Some of the defendants filed affidavits in support of their respective motions to transfer. In addition, several defendants filed answers to forum interrogatories propounded by the plaintiffs.

¶ 12    The plaintiff filed responses in opposition to the motions to transfer, and attached supporting documents, including discovery responses from the defendants. The plaintiffs argued that the moving defendants failed to meet their respective burdens to show that the plaintiffs' chosen forum was inconvenient for that defendant, and that another forum would be more convenient for all parties. The plaintiffs further argued that the defendants failed to show that the relevant public- and private-interest factors strongly favored transfer of the case from Madison County to Montgomery County.

¶ 13 Supporting Affidavits and Discovery Requests

¶ 14 As noted above, the parties attached affidavits, discovery responses, and other documents in support of their respective submissions. In response to the plaintiffs' interrogatories, Dr. Mulch stated that she resides and practices medicine in Montgomery County, and that she is a partner in Springfield Clinic, LLP. She noted that Springfield Clinic has offices in Montgomery County and Sangamon County. As a partner, Dr. Mulch attends bimonthly business meetings at Springfield Clinic's offices in Sangamon County. Dr. Mulch further stated that she only sees patients in Montgomery County. Dr. Mulch provided her patient hours. Her office is open from 7 a.m. to 5 p.m. on Monday and Friday, from 8 a.m. to 5 p.m. on Tuesday and Wednesday, and from 8 a.m. to 6 p.m. on Thursday, with additional hours on Saturday.

¶ 15 Dr. Mulch filed an affidavit stating that it is more convenient for her to testify or appear in Montgomery County than Madison County, that she resides and works as a treating physician in Montgomery County, and that if she were compelled to testify in Madison County, rather than Montgomery County, she would be "forced to take more time off work and see less patients." Dr. Mulch further stated that she treated Danny Foster in Montgomery County, that any evidence located at Springfield Clinic is more easily accessed from Montgomery County than Madison County, and that her "job functions as a partner in Springfield Clinic would be interrupted" if she were forced to testify or appear in Madison County.

¶ 16 Springfield Clinic, LLP, is an Illinois LLP that operates a multi-specialty clinic in order to serve the health care needs of patients throughout central Illinois by providing a

5

comprehensive network of medical offices throughout the central Illinois region. The main office is located in Springfield, Illinois, in Sangamon County. As a part of its very limited responses to discovery requests from the plaintiffs, the Springfield Clinic produced information from its web site, which revealed that the Springfield Clinic medical specialists travel to more than 40 remote central Illinois locations as part of an outreach program. The web site further indicates that the goal of the Springfield Clinic is to deliver the same high quality care found in Springfield to patients closer to their homes. While Springfield, Illinois, serves as the hub for its operations, the Springfield Clinic also offers medical care at 11 different satellite offices in several surrounding communities, including the office in Hillsboro, Illinois. Springfield Clinic is affiliated with hundreds of clinicians, most of whom had no involvement with Danny Foster's care and treatment. Springfield Clinic indicated that many of its physicians and clinicians are board certified, and many of its services are nationally accredited. Although the Springfield Clinic objected to almost every interrogatory posed by the plaintiffs, the discovery did indicate that the Springfield Clinic does not provide services in Madison County, and has no affiliations with healthcare services in Madison County. Notably, the Springfield Clinic stated that it operates an electronic medical record system, and that all of Danny Foster's records are maintained in its system in Montgomery County and/or Sangamon County.

¶ 17   Clinical Radiologists, S.C., is an Illinois corporation with offices in Springfield and Quincy. According to its discovery responses, Clinical Radiologists had a contract with Hillsboro Area Hospital in June 2012. Under the terms of the contract, Clinical

6

Radiologists provided "on-site" radiologists and teleradiology services. Teleradiology services allow radiologists to interpret radiological scans from remote locations. At the time of these events, Clinical Radiologists had more than 73 board certified physicians under contract. It provided radiologists to staff several health care facilities, including St. Anthony's Health Center and Imaging Center. St. Anthony's and the Imaging Center are located in Madison County, Illinois. At least two physicians employed by Clinical Radiologists reside in Madison County. None of the radiologists in Madison County provided any medical care or treatment to Danny Foster.

¶ 18    Dr. Wynn resides in Chatham, Sangamon County, Illinois. According to discovery responses, Dr. Wynn was an employee of Clinical Radiologists at the time he reviewed and interpreted Danny Foster's CT scan. Dr. Wynn is currently an employee and a shareholder of Clinical Radiologists. Dr. Wynn works out of a number of medical centers, including Hillsboro Area Hospital. He has, on rare occasion, provided radiological services out of facilities at St. Anthony's Health Center and the Imaging Center in Madison County. Dr. Wynn interprets radiology images both on site and from remote locations.

¶ 19    Illinois Emergency Physicians (IEP) is a limited liability partnership with its primary office located in Traverse City, Michigan. IEP provides physicians to staff hospital emergency departments, and urgent care centers on a contract basis. It also provides hospitalists on a contract basis. At the time of these events, IEP had a contract with Hillsboro Area Hospital. According to the terms of the contract, IEP agreed to staff Hillsboro Area Hospital's emergency department with qualified physicians 24 hours a

7

day, 7 days a week. The contract also required IEP to provide the Hospital with the hardware and software necessary to operate the emergency department's charting system, known as the "QualChart System." IEP was required to provide computers, printers, modems, and other equipment as necessary to operate the medical record charting system. Any equipment placed by IEP remained the property of IEP. According to documents provided by the plaintiffs, IEP was not a stranger to the Madison County courthouse, as it regularly filed lawsuits in the circuit court of Madison County against Madison County residents.

¶ 20 Dr. Sippo is a resident of Madison County. According to discovery responses, Dr. Sippo was an independent contractor and physician partner with IEP when he evaluated Danny Foster at Hillsboro Area Hospital. Dr. Sippo had been assigned by IEP to staff the Hillsboro Area Hospital's emergency department under the contract between IEP and Hillsboro Area Hospital. Dr. Sippo is no longer affiliated with IEP. He has medical practices in Shelby County and St. Clair County. Dr. Sippo also has a consulting business, Arthur Sippo, M.D., MPH, LLC, through which he provides expert testimony on life expectancy, typically in asbestos cases, pending in Madison County. The registered agent for the LLC is in Madison County.

¶ 21 Dr. Kietzman is a resident of Wheaton, Du Page County, Illinois. At the time Dr. Kietzman evaluated Danny Foster, she was a physician partner with IEP. In discovery responses, Dr. Kietzman indicated that from May 31, 2012, through July 28, 2012, she worked a total of seven shifts in the emergency department at Hillsboro Area Hospital. After July 29, 2012, she stopped working at that hospital. Dr. Kietzman no longer has a

relationship with Illinois Emergency Physicians, LLP. She currently practices medicine in Aurora, Illinois. Dr. Kietzman indicated that if she was involved in a trial in Madison County, she would not be able to work any shifts for her full time job in Aurora, Illinois, and that this would significantly impact her practice. Dr. Kietzman also provided an affidavit stating that travel to Madison County would cause a greater hardship than travel to Montgomery County, as her only viable travel option to either county is by car, and that the longer commute to Madison County would "impede" her ability to "fulfill professional obligations to her patients and employer."

¶ 22    Hillsboro Area Hospital is located in Montgomery County. In its answers to interrogatories, Hillsboro Area Hospital stated that it has contracts with third parties who arrange for physicians, nurses, and other medical personnel to provide care and treatment for persons seen or admitted at the Hospital. At the time of these events, Hillsboro Area Hospital had contracts with Illinois Emergency Physicians, LLP, Clinical Radiologists, and Empire Medical Staffing, LLC. Hillsboro Area Hospital also filed the affidavit of Angela Dugan, director of case management for Hillsboro Area Hospital. In the affidavit, Ms. Dugan identified six potential employees who might be called as witnesses in the case. Of these potential witnesses, one resides in Bond County, one resides in Sangamon County, and four reside in Montgomery County. Ms. Dugan also stated that for those employees of Hillsboro Hospital "who may or will be called as a witness in this matter, it will be easier for them to appear at a deposition or trial in Hillsboro, Montgomery County, Illinois so as to lessen the disruption of their work schedule and

9

any personal commitments and to lessen the staffing demands on Hillsboro Area Hospital."

¶ 23   A hearing was held on September 30, 2014.  Following the arguments of counsel, the trial court granted the parties time to supplement their pleadings and took the matter under submission.  On January 8, 2015, the trial court issued a written order, denying the defendants' motions to transfer based on *forum non conveniens*.  This appeal followed.

¶ 24                                ANALYSIS

¶ 25   *Forum non conveniens* is an equitable doctrine founded in considerations of fundamental fairness and sensible and effective judicial administration.  *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441, 848 N.E.2d 927, 934 (2006).  The doctrine allows a circuit court to decline jurisdiction and transfer an action when it appears that another forum can better serve the convenience of the parties and the ends of justice.  *First America Bank v. Guerine*, 198 Ill. 2d 511, 515, 764 N.E.2d 54, 57 (2002).  A trial court is vested with considerable discretion in determining whether to grant or deny a *forum non conveniens* motion, and its ruling will not be reversed unless it can be shown that the court abused its discretion in balancing the relevant public- and private-interest factors.  *Langenhorst*, 219 Ill. 2d at 442, 848 N.E.2d at 934.  A court abuses its discretion when no reasonable person would take the view adopted by the trial court.  *Langenhorst*, 219 Ill. 2d at 442, 848 N.E.2d at 934.  That said, our supreme court has repeatedly reminded us that a trial court's discretionary power under the *forum non conveniens* doctrine should be exercised only in exceptional circumstances when the interests of justice require a trial in a more convenient forum.  See *Langenhorst*, 219 Ill.

2d at 442, 848 N.E.2d at 934; *Guerine*, 198 Ill. 2d at 515, 764 N.E.2d at 57; *Torres v. Walsh*, 98 Ill. 2d 338, 346, 456 N.E.2d 601, 605 (1983).

¶ 26    In considering a *forum non conveniens* issue, the trial court must evaluate the total circumstances of the case and consider all relevant private- and public-interest factors, without emphasizing any single factor. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935. The private-interest factors are not weighed against the public-interest factors, and each case must be considered on its own unique facts. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935.

¶ 27    Factors of private interest include: (1) the convenience of the parties, (2) the relative ease of access to sources of testimonial, documentary, and real evidence, and (3) all other practical considerations that make the trial of a case easy, expeditious, and inexpensive. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 516, 764 N.E.2d at 58. Factors of public interest include: (1) the interest in deciding controversies locally, (2) the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a forum with little connection to the litigation, and (3) the administrative difficulties presented by adding litigation to already congested court dockets. *Langenhorst*, 219 Ill. 2d at 443-44, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 517, 764 N.E.2d at 58. The defendant has the burden to show that the balance of relevant private- and public-interest factors strongly favors transfer to another forum. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935. The defendant must show that the plaintiff's chosen forum is inconvenient to the defendant, and that another forum is more

11

convenient to all parties. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 518, 764 N.E.2d at 59.

¶ 28    A further consideration in the forum analysis is the deference owed to a plaintiff's choice of forum. *Guerine*, 198 Ill. 2d at 517, 764 N.E.2d at 58. The plaintiff has a substantial interest in selecting the forum where his rights will be vindicated, and the plaintiff's choice of forum should rarely be disturbed unless other factors strongly favor transfer. *Guerine*, 198 Ill. 2d at 517, 764 N.E.2d at 58. A plaintiff's choice of forum is given somewhat less deference when the plaintiff chooses a forum other than his home forum or the location where some part of the action arose. *Langenhorst*, 219 Ill. 2d at 448, 848 N.E.2d at 938; *Guerine*, 198 Ill. 2d at 517, 764 N.E.2d at 59. But *less* deference does not mean *no* deference. *Langenhorst*, 219 Ill. 2d at 448, 848 N.E.2d at 938. As previously noted, the defendant bears the burden to show that the plaintiff's chosen forum is inconvenient to the defendant and that another forum is more convenient to all parties. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 518, 764 N.E.2d at 59. In doing so, the defendant may not argue that the plaintiff's chosen forum is inconvenient to the plaintiff. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 518, 764 N.E.2d at 59.

¶ 29                    Plaintiffs' Choice of Forum

¶ 30    With these principles in mind, we consider the trial court's order denying the defendants' motions to transfer. In this case, the trial court prepared a detailed order, evaluating the circumstances of the case and considering the relevant factors in its forum

12

analysis. As a result, this is a case where we have a record of the trial court's findings and analysis, and a base from which to review its decision.

¶ 31 In the order, the trial court initially considered what level of deference was due the plaintiffs' choice of forum. The court found that the plaintiffs' choice of forum was entitled to "somewhat less deference" because the plaintiffs did not reside in Madison County. While plaintiffs have a substantial interest in choosing the forum where their rights will be determined, this interest is accorded less deference where the chosen forum is neither the plaintiffs' place of residence nor the site of the injury. *Guerine*, 198 Ill. 2d at 517-18, 764 N.E.2d at 59. In this case, the trial court correctly determined that the plaintiffs' choice of forum was due somewhat less deference, as opposed to no deference. Accordingly, under the unequal balancing test, the battle over forum starts with the plaintiffs' choice of forum in the lead. *Guerine*, 198 Ill. 2d at 521, 764 N.E.2d at 61.

¶ 32 Private-Interest Factors

¶ 33 Next, we consider the private-interest factors, the first of which is the convenience of the parties. According to the record, the plaintiffs were residents of Montgomery County when this cause of action arose, and when they filed this lawsuit. The plaintiffs now live in Arizona. Although the plaintiffs reside outside of their chosen forum, it is presumed that the chosen forum is convenient for them. The defendants may not prevail on a forum motion by asserting that a trial in the plaintiffs' chosen forum is inconvenient for the plaintiffs. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935.

¶ 34 According to the record, Dr. Mulch and Hillsboro Area Hospital are residents of Montgomery County. Springfield Clinic's primary office is in Sangamon County, but it

13

has one of its satellite offices in Montgomery County. Dr. Wynn and Clinical Radiologists are residents of Sangamon County. Dr. Kietzman is a resident of Du Page County. Illinois Emergency Physicians is located in Michigan, but has a registered agent in Cook County, Illinois. Dr. Sippo and Arthur Sippo, M.D., MPH, LLC, are residents of Madison County. Thus, the residences of the individual defendants and defendant entities are spread among several counties.

¶ 35 Dr. Sippo and Arthur Sippo, M.D., MPH, LLC, were among the defendants who moved to transfer this case from Madison County to Montgomery County based on *forum non conveniens*. The record, however, shows that Dr. Sippo and his LLC are residents of Madison County, and that Dr. Sippo often testifies as a consultant in Madison County. Their arguments suggesting that their home county is inconvenient are not well taken. See *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 555, 607 N.E.2d 214, 217 (1992) ("It is all but incongruous for defendants to argue that their own home county is inconvenient.").

¶ 36 We take judicial notice that Madison County and Montgomery County are contiguous, and that the distance between the Madison County courthouse in Edwardsville and the Montgomery County courthouse in Hillsboro is approximately 42 miles. Thus, for all moving defendants, except Dr. Kietzman and IEP, the relatively short distance between the chosen forum and the alternate forum substantially reduces the burden of travel and makes it unlikely that a trial in Madison County would be more costly or inconvenient. *Langenhorst*, 219 Ill. 2d at 450, 848 N.E.2d at 939; *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 113, 554 N.E.2d 209, 214 (1990).

14

¶ 37   Some defendants have filed affidavits stating that a trial in Madison County would be inconvenient, and that a trial in Montgomery County would be more convenient. Dr. Mulch filed an affidavit stating that it would be inconvenient for her to appear in Madison County because she would see fewer patients, but she provided no specific facts in support of this averment. In answers to interrogatories, Dr. Mulch noted that her office is generally open from 7 or 8 a.m. to 5 or 6 p.m. during the week. Thus, it would be difficult to see patients during the days that the trial is in session, regardless of whether the trial is held in Madison County or Montgomery County.

¶ 38   Hillsboro Area Hospital filed an affidavit from its director of case management, Angela Dugan. Ms. Dugan identified six potential employees who might be called as witnesses in the case. One of the employee-witnesses resides in Bond County, another resides in Sangamon County, and the remaining four reside in Montgomery County. In the affidavit, Ms. Dugan states that, for all employee-witnesses who will or may be called to testify, "it will be easier for them to appear at a deposition or trial in Hillsboro, Montgomery County, Illinois so as to lessen the disruption of their work schedule and any personal commitments and to lessen the staffing demands on Hillsboro Area Hospital." Notably, none of the employee-witnesses submitted an affidavit regarding the issue of inconvenience, and Ms. Dugan's affidavit provides no specific information regarding staffing demands and disruptions in employees' work schedules. Further, it would be necessary for the Hospital to adjust staff schedules whether the trial occurs in Madison County or Montgomery County.

¶ 39   Dr. Kietzman resides furthest from Madison County.  She, too, filed an affidavit, stating that it would cause greater hardship for her to travel to Madison County than to travel to Montgomery County and that the longer commute to Madison County would impede her ability to "fulfill professional obligations to her patients and her employer." Dr. Kietzman resides in Wheaton, Illinois.  The distance from Wheaton to Montgomery County on Interstate 55 is approximately 240 miles, while the distance from Wheaton to Madison County on Interstate 55 is approximately 265 miles.  This is a difference of 25 miles.  Dr. Kietzman faces a lengthy commute whether this case is tried in Madison County or Montgomery County, and Dr. Kietzman's claim that an additional 25 miles of travel to Madison County would impose a significantly greater hardship is disingenuous.

¶ 40   The conclusory statements made in the affidavits described herein concerning inconvenience do not provide any specific information showing how a trial in Madison County would be inconvenient to each of the respective affiants and/or pose undue hardship.  Furthermore, these affidavits fail to demonstrate how a trial in Montgomery County would be more convenient to all parties.  Additionally, upon reviewing some of the statements in the defendants' affidavits in conjunction with their interrogatory responses, we notice ambiguities relative to the claims of inconvenience.  Essentially, these affidavits establish that it is not the *place of trial*, but the *fact of trial* that is inconvenient.  Any trial poses some inconvenience to the parties.  But the burden under the doctrine of *forum non conveniens* is for the defendants to show that the plaintiffs' chosen forum is inconvenient to the defendant, and another forum is more convenient to

16

all parties. We do not believe the defendants have met this burden, and find that the affidavits are not dispositive of this issue.

¶ 41 Dr. Wynn and Clinical Radiologists did not file a motion to transfer, and they did not join in other written motions to transfer. In fact, the docket entry in the record indicates they filed an answer to the plaintiffs' complaint. According to the transcript of proceedings at the hearing held on September 30, 2014, Dr. Wynn and Clinical Radiologists appeared, but did not seek to join the motions for transfer that had been filed by the other defendants. In a brief argument to the court, their attorney did state that Montgomery County was a more convenient forum. Based on responses to discovery in the record, Clinical Radiologists has contracts with two medical centers in Madison County to provide radiology services for Madison County residents, and they have two employees on site at one of those locations. Dr. Wynn is employed by Clinical Radiologists and interprets radiology scans and films out of several medical centers and from remote locations. He has also, on rare occasion, worked in Madison County, filling in for another radiologist. Based on the record, Dr. Wynn and Clinical Radiologists did not establish that Madison County would be an inconvenient forum for trial.

¶ 42 In this appeal, the moving defendants contend that the trial court placed undue emphasis on the fact that Dr. Wynn and Clinical Radiologists did not file a motion for transfer, or otherwise take a position on the inconvenience factor. In its order, the trial court correctly noted that Dr. Wynn and Clinical Radiologists did not join in the motions to transfer. The court further stated that it could not presume that the chosen forum was inconvenient to those defendants where they have not made that claim. After reviewing

17

the order, we find no indication that the court placed undue weight on the fact that Dr. Wynn and Clinical Radiologists had not joined in the motions to transfer. The court correctly noted that the moving defendants had a high burden. The court then found that the defendants had failed to meet their burden to show that Madison County was an inconvenient forum, and that Montgomery County was more convenient for all parties.

¶ 43   Our analysis of the factor involving the convenience to the parties, as well as our consideration of certain other factors, such as the relative ease of access to sources of testimonial, documentary, and real evidence, and even some of the public-interest factors, affords us a glimpse into the modern-day practice of medicine and the delivery of health care in our society today. In 2002, in *Guerine*, our supreme court evaluated whether the equitable doctrine of intrastate *forum non conveniens* remained a viable tool to prevent the "perceived abuses in its invocation or time consumed in its resolution." (Internal quotation marks omitted.) *Guerine*, 198 Ill. 2d at 520, 764 N.E.2d at 60. Although the court decided that this equitable doctrine was still workable, the court acknowledged even then that because of changes in our society, the doctrine of *forum non conveniens* may have to be viewed from a slightly different lens. More specifically, the court explained, "we are connected by interstate highways, bustling airways, telecommunications, and the world wide web. Today, convenience—the touchstone of the *forum non conveniens* doctrine—has a different meaning. [Citation.] That is, the convenience of the parties depends in large measure upon the context in which we evaluate their convenience." *Guerine*, 198 Ill. 2d at 525-26, 764 N.E.2d at 63.

¶ 44　In our view, since 2002, technological advances in the practice of medicine and innovations in the delivery of health care have escalated exponentially. These advances include the mode of ownership, operation, and management of medical practices and services. This case exemplifies the various forms of modernization as we learn about physician-owned multi-specialty groups like the Springfield Clinic. By affiliating with hundreds of physicians, the Springfield Clinic can deliver nationally accredited health care services throughout southern Illinois. We are also offered insight into what is now the norm, that radiologists are no longer required in a hospital every hour of the day, as the radiological scans can be read remotely, from any part of the globe. Clinical Radiologists and Springfield Clinic employ or contract with predominantly board certified physicians.

¶ 45　The Hillsboro Area Hospital need not have physicians on staff to take care of patients in their emergency room, as emergency room doctors, like radiologists, are available for hire through the operation and management of a corporate practice in Michigan. Dr. Sippo and Dr. Kietzman, both Illinois physicians, contracted employment with IEP, a Michigan corporation. At the request of IEP, Dr. Sippo and Dr. Kietzman staffed emergency rooms in hospitals throughout Illinois. Even the technology required to keep patient health care records was provided by a third party entity, like the Springfield Clinic or IEP. The issue of convenience, in a world where everything is available instantaneously and remotely, now blurs even further the lines of convenience. In our view, the technological advances in the practice of medicine render many of the usual convenience-of-the-parties arguments antiquated and implausible. This is

19

particularly true in this case, where the record clearly demonstrates that more than one forum has a significant relationship to the issues raised herein, the chosen forum is contiguous to Montgomery County, and the two courthouses are less than 50 miles apart.

¶ 46 Nevertheless, the individual physicians have stated that their ability to care for their patients would be interrupted if the trial is held in Madison County. The reality is that their schedules for delivering patient care will be interrupted whether the case is tried in Madison County or Montgomery County. In medical negligence cases, the defendant medical providers are generally in attendance each day, all day, every day, and the days are long. The court invariably faces interruptions and delays during a longer trial, often requiring witnesses to idle in the hallways. In this case, the defendants have established that *the fact of trial*, rather than *the place of trial*, is inconvenient for them. But the *fact of trial* is not a factor in the *forum non conveniens* analysis. Based on the record, this factor, convenience of the parties, does not strongly favor transfer to Montgomery County.

¶ 47 We next consider the relative ease of access to sources of testimonial, documentary, and real evidence. In this case, the medical records and radiological scans can be easily copied and scanned for dissemination among counsel for all parties, and these records can be produced for trial in either forum. There is no reason to believe that the transportation of any original records or documents to the chosen forum would pose a significant burden on the defendants in this case. This factor does not strongly favor transfer to Montgomery County.

20

¶ 48    Another private-interest factor is the possibility of viewing the premises.  This factor is not concerned with the necessity of viewing the premises, but rather the possibility of viewing the premises, if appropriate.  *Langenhorst*, 219 Ill. 2d at 448-49, 848 N.E.2d at 938.  In its order, the trial court acknowledged that the possibility of viewing the premises weighed in favor of Montgomery County, but went on to state that it could not see how a jury view would be necessary in this case.  According to the transcript of proceedings, the moving defendants wavered in their arguments regarding the significance of a view of the various medical facilities.  This case involves the alleged failure to diagnose a gastric ulcer.  While a jury view of the medical facilities could be more easily accomplished in Montgomery County, there is nothing to suggest that a view of the facilities would be necessary or helpful.  See *Hackl v. Advocate Health & Hospitals Corp.*, 382 Ill. App. 3d 442, 452, 887 N.E.2d 726, 734 (2008) (viewing the site is rarely called for in a medical negligence case).  Under the circumstances of this case, this factor tips in favor of Montgomery County, but is accorded little weight.  As such, this factor does not strongly favor transfer.

¶ 49    Finally, we consider the remaining private-interest factors regarding the availability of compulsory service to secure the attendance of unwilling witnesses, the costs to secure the attendance of willing witnesses, and all other practical considerations that make the trial of a case easy, expeditious, and inexpensive.  In this case, compulsory process is available in Madison County and Montgomery County.  All in-state witnesses that have been identified by the parties are subject to subpoena in either county.  The defendants and their officers, directors and employees may be compelled to appear

21

through a notice under Illinois Supreme Court Rule 237(b) (eff. July 1, 2005). The defendants may also be compelled to produce the originals of medical records, and other documents or tangible things under Rule 237(b). At present, no party has identified any out-of-state, nonparty witnesses, and trial experts have not yet been disclosed. Finally, the record shows that the parties' attorneys have their offices in Madison County, St. Clair County, and St. Louis City. Although this factor does not carry great weight, it remains a factor that falls within the other practical considerations that make a trial easy, expeditious, and inexpensive. Thus, the remaining private-interest factors do not strongly favor transfer.

¶ 50                                Public-Interest Factors

¶ 51    We next consider the public-interest factors, the first of which is the interest in deciding localized controversies locally. The defendants argue this is a localized controversy because all of the alleged negligent acts occurred in Montgomery County. They urge us to find that medical decisions made within a county, affecting residents of that county, should be evaluated and judged locally. In support of their argument, the defendants invoke the "similar locality rule."

¶ 52    The "similar locality" rule is an evidentiary rule that involves the standard of care by which a physician's professional conduct must be judged. *Purtill v. Hess*, 111 Ill. 2d 229, 489 N.E.2d 867 (1986). Under the "similar locality" rule, a physician's conduct is judged by the standard of care of a reasonably well-qualified physician practicing in the same or a similar community. *Purtill*, 111 Ill. 2d at 243, 489 N.E.2d at 872-73. In *Purtill*, the Illinois Supreme Court recognized that because there are relatively uniform

22

standards for the education and licensing of physicians, there is no reason why physicians who practice in rural areas should not possess a degree of competency similar to that possessed by physicians who practice in urban areas. *Purtill*, 111 Ill. 2d at 246, 489 N.E.2d at 874. Our supreme court also recognized that the availability of medical facilities and the presence or absence of specialists in a locality may dictate the method in which a physician's education and skills are applied. *Purtill*, 111 Ill. 2d at 246, 489 N.E.2d at 874. If there are certain uniform standards that would be applicable to a given situation, regardless of the locality, then the lack of familiarity with the practice in a particular locality will not disqualify the expert. *Purtill*, 111 Ill. 2d at 247, 489 N.E.2d at 874-75. If, however, the availability of facilities or other conditions in a locality are relevant, then an expert must be acquainted with accepted standards of care under similar circumstances before he or she can express an opinion regarding whether the defendant doctor deviated from the standard of care. *Purtill*, 111 Ill. 2d at 247, 489 N.E.2d at 875.

¶ 53 According to the information provided in response to the plaintiffs' forum discovery requests and interrogatories, some of the individual defendants are board certified, and two of the entities indicated that they affiliate with board certified physicians, and provide nationally accredited services. In addition, the record shows that Hillsboro Area Hospital contracted with three separate entities to provide physicians and other medical services for its patients. Under the terms of these contracts, Hillsboro Area Hospital did not select the physicians who would staff its emergency department or interpret the radiology scans taken at the Hospital. The contracting entities chose the physicians and other health care providers to staff various departments or provide

23

services. The contracting entities even provided medical record software, computers, and other services required for the care and treatment of patients at the Hillsboro Area Hospital. There is simply nothing in the record at present to suggest that there was some unique circumstance in the care and treatment rendered to Danny Foster that would invoke the use of the "similar locality" rule. And, as noted previously, the "similar locality" rule is an evidentiary issue, rather than a *forum non conveniens* factor. This evidentiary issue has not yet been raised before the trial court, and the defendants have not offered any evidence that the "similar locality" rule will be applicable in this case.

¶ 54    According to the allegations in the plaintiffs' complaint, the negligent acts and omissions occurred in Montgomery County, and most of the subsequent medical care was provided in Sangamon County. The defendants' residences, medical practices, and service areas, however, are spread throughout Madison, Montgomery, Sangamon, and other counties in Illinois. In addition, the delivery of services and management of medical practices is interconnected and centralized, rather than localized. Thus, this case does not involve a particularly localized controversy, as several counties have some interest in the outcome of the case. This factor does not strongly favor transfer to Montgomery County.

¶ 55    Next, we consider whether Madison County has a sufficient connection to this case to warrant imposing the burden of a trial on its citizens and circuit court. The trial court determined that it would not be unfair to impose jury duty on Madison County residents because the county has several connections to the litigation. The record supports this finding. In this case, Dr. Sippo and his LLC are residents of Madison

24

County. Dr. Sippo operates a consulting business in Madison County, offering his expertise as a physician to both plaintiffs and defendants. Dr. Sippo is routinely named as an expert witness in asbestos cases. Therefore, the residents of Madison County have a real and genuine interest in considering allegations of medical negligence involving two of its residents, especially where those residents appear before Madison County juries and render expert medical opinions.

¶ 56 Additionally, this is a failure to diagnose case involving the interpretation of radiological scans by an employee of Clinical Radiologists. Clinical Radiologists regularly contracts its radiological services to medical facilities in Madison County. The residents of Madison County have a genuine interest in considering the quality of care being offered by physicians working for Clinical Radiologists. Since Madison County has significant interests in deciding this case, it would not be unfair to impose the expenses of trial and jury duty on Madison County residents. This factor does not strongly favor transfer.

¶ 57 Finally, as to the matter of docket congestion, the trial court found that the moving defendants had not demonstrated that there would be greater administrative burdens if the trial occurred in Madison County. We note that each of the parties relied on certain select statistics within the Annual Report of the Illinois Courts that might, if considered in isolation, favor their respective choice of forum. For example, the defendants pointed to the Annual Reports from 2012 and 2013, to support their contention that the civil dockets in Madison County are more congested than those in Montgomery County. The plaintiffs countered with information from the office of the Madison County Circuit

25

Clerk to show that approximately 75% of those cases were on the asbestos docket, which is overseen by one judge and a designated staff. A review of the Annual Report of the Illinois Courts indicates that in 2013 and 2014, the clearance rates for civil cases in the Third Judicial Circuit, including Madison County, were slightly higher than the clearance rate in the Fourth Judicial Circuit, including Montgomery County, and that from 2010 through 2014, both circuits have clearance rates over 90%. "Court congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly." *Guerine*, 198 Ill. 2d at 517, 764 N.E.2d at 58. Moreover, the trial court is in the best position to consider any administrative problems in relation to its own docket and its ability to try the case in an expeditious manner. *Langenhorst*, 219 Ill. 2d at 451, 848 N.E.2d at 939. This factor does not strongly favor transfer.

¶ 58                                    CONCLUSION

¶ 59   In this case, the circuit court determined that the defendants failed to meet their burden to show that the balance of factors strongly favored transfer of this case to Montgomery County, and that Montgomery County was more convenient to all parties. After reviewing the record, we cannot say that no reasonable person would have taken the view of the circuit court. Therefore, we conclude that the circuit court did not abuse its discretion in denying the moving defendants' motions to transfer based on intrastate *forum non conveniens*.

¶ 60   Accordingly, the judgment of the circuit court of Madison County is affirmed.

26

¶ 61    Affirmed.

2016 IL App (5th) 150055

NO. 5-15-0055

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

DANNY FOSTER and KATHLEEN FOSTER,                )    Appeal from the
                                                 )    Circuit Court of
    Plaintiffs-Respondents,                      )    Madison County.
                                                 )
v.                                               )    No. 14-L-530
                                                 )
HILLSBORO AREA HOSPITAL, INC., LAUREL KIETZMAN, M.D., )
ARTHUR SIPPO, M.D., ARTHUR C. SIPPO, M.D., MPH, LLC,  )
BRANDON WYNN, D.O., CLINICAL RADIOLOGISTS, S.C.,     )
BARBARA MULCH, M.D., SPRINGFIELD CLINIC, LLP, and    )
ILLINOIS EMERGENCY PHYSICIANS, LLP,              )    Honorable
                                                 )    William A. Mudge,
    Defendants-Petitioners.                      )    Judge, presiding.
_____

**Opinion Filed:**        **November 10, 2016**
_____

**Justices:**        Honorable Judy L. Cates, J.

                      Honorable S. Gene Schwarm, P.J., and
                      Honorable Richard P. Goldenhersh, J.,
                      Concur

_____

**Attorneys**      Brad A. Elward, Heyl, Royster, Voelker & Allen, 300 Hamilton Blvd., Peoria, IL
**for**           61601-6199; Richard K. Hunsaker, Ann C. Barron, Heyl, Royster, Voelker &
**Petitioners**  Allen, 105 West Vandalia Street, Suite 100, Edwardsville, IL 62025; Terese A.
              Drew, Hinshaw & Culbertson, LLP, 701 Market Street, Suite 1300, St. Louis,
              MO 63101; Kim Jansen, Hinshaw & Culbertson, LLP, 222 N. LaSalle Street,
              Suite 300, Chicago, IL 60601; Ted W. Dennis, Freeark, Harvey & Mendillo,
              P.C., 115 W. Washington Street, P.O. Box 546, Belleville, IL 62222-0546; James
              E. Neville, Derek J. Siegel, Neville, Richards & Wuller, LLC, 5 Park Place
              Professional Centre, P.O. Box 23977, Belleville, IL 62223-0977

_____

**Attorneys**      Georgiann Oliver, Eric C. Young, Joley, Oliver & Beasley, P.C., 8 East
**for**           Washington Street, Belleville, IL 62220; Burton M. Greenberg, 500 North
**Respondents** Broadway, Suite 1460, St. Louis, MO 63102

_____